We move on to the final oral argument of this afternoon before v. Sanders, case number 5-18-0339, Counsel for the Accounting Agencies. Thank you, Governor. Thank you. Thank you. May it please the Court. Counsel. Celestine Dotson on behalf of the appellant, Mr. Arion Sanders. We are asking this Court to reverse the remand, Mr. Sanders, because he was convicted and is currently serving a 43-year sentence based on a false confession that the trial court had previously suppressed. During the course of a three-day suppression hearing, the trial court found that Mr. Sanders had been abused and traumatized during the detective's interrogation. The trial court found that Arion had been denied counsel, physically menaced, yelled at and brawl beaten, and threatened with the arrest and possible physical assault of his younger brother. Because of these factors, the confession was coerced and deemed unreliable, ultimately unconstitutional. Nevertheless, the state sought to enter the evidence of these suppressed statements in its case in chief, denying an innocent man of a fair trial. The state would contend that Federal Rule of Criminal Procedure 801.D2 controls. It refers to admissions by party opponents. That is identical to the Illinois rule, isn't it? Yes, Your Honor, but that's what it was. In the Illinois rule, it's called by a slightly different name. I don't have it in front of me right now, but do you have the title of it in the Illinois rule before you? I apologize, I can't hear you, Your Honor. Do you have the title of the Illinois rule 801.D2A before you? I do not, Your Honor. Should I proceed? You may. Okay, thank you. That rule does not control. First, it doesn't control this issue because no rule should outweigh the clear constitutional concerns that are at issue here. Secondly, strictly speaking, this rule is inapplicable to this case because there was no admission while Mr. Sanders was on the stand. Mr. Sanders never admitted anything while he was on the stand, nor was there any corroboration of the suppressed statements that the state sought to injure as hearsay evidence against him. However, there are several references to a false confession that was deemed suppressed. Essentially, the state used a false confession to railroad an innocent man into prison for 43 years. And to seal his fate, there was a biased juror that deliberated, further tainting his trial. In his motion for a new trial, Mr. Sanders demonstrated the prima facie evidence necessary to show that Juror 19 had not only lied in regard to her previous convictions, but also was biased against African-American males. Mr. Sanders is and does present as an African-American male. The combination of these travesties resulted in a patently unfair conviction based on false evidence and a tainted juror. These are two cornerstones of a fair trial. Therefore, this conviction must be reversed, and Mr. Sanders must be given a trial that the Constitution guarantees is solved, one without tainted evidence and prejudiced jurors. The line of cases in regard to Mr. Sanders' initial point, first point, are clear. There is no case that supports the notion that suppressed statements should be used by the prosecutor, particularly not in his case in chief. Yet that's what was allowed in the trial that's before you today, Your Honor. What was the trial court's rationale for allowing these previously suppressed statements from coming in? Well, his – he was in agreement with the state that the rule – the Illinois rule and the federal rule of criminal procedure also that was cited was – supported the notion that Mr. Sanders was vulnerable to that statement being brought in. Of course, it was over our objection for a number of reasons, but nevertheless, the court reversed itself, which we contend when the suppression hearing – it was a three-day hearing – the amount of atrocities that was visited upon that child in that interrogation that came out in evidence is appalling. That became the law of the case. When that suppression hearing was – our motions were granted, that became the law of the case. Essentially, the trial court reversed itself on the eve of trial and allowed the jury to hear evidence, false evidence. Literally, the jury deliberated on a false confession that everyone who had been having that case knew was unreliable. It had been coerced in the most inconceivable way. But to be clear, counsel, this was at the second trial, correct? No. This was – when you say this – when you say this – If I'm remembering correctly, the trial court originally granted the motion to suppress. Correct. That was before any trial. Right. Then a trial was held. Correct. The defendant chose to testify. Correct. But this statement that you're talking about that's at issue in this case was allowed in the second trial, correct? Correct. That's why I just want to be clear. That's what we're talking about. Yes, that is what we're talking about. And just for total, you know, understanding, the reason why I got a little turned around, because there's actually three trials, strictly speaking, because the first trial was aborted, but a jury had not sworn in but chosen. So ultimately, what we're looking at here is two lines of cases. The first line of cases involving whether or not the – in regard to Mr. Sanders' first issue, whether or not the jury should have been allowed to hear that – those statements. Every case, Waldemar and Behavior particularly, are in support of the notion that the state does not get to use impeachment in its case in chief. And this is the impeachment of the worst kind. This was a suppressed statement. And by the trial court reversing itself and basically turning the law of the case over, the jurors really contemplated false evidence. The basis of that verdict is clearly impacted by their ability to have access to false evidence. Forty-three years, this young man is looking at, based on a juror having evidence that was false, and laid at his feet for him to consider along with the other extremely flimsy evidence that was brought together to convict Mr. Sanders. Secondly, in regard to Mr. Sanders' second issue, the juror, juror number 19, failed to explicitly identify her previous – her conviction. She actually just ultimately didn't say anything about that. I think that's meaningful because a conviction gives you more interaction with the state. That is going to color how you look at other people who also have to be – have to contend with the state. That experience should have been explored in Ward 0, but we were denied that. On top of that, we find that juror number 19 also held extremely negative notions regarding people of African-American descent. Her meaning that she shared was essentially an endorsement of the idea that young black men are criminals. Now, the state – the line of cases folks particularly supports the notion that when Mr. Sanders presented this evidence to the court, it should have been – triggered an inquiry of Ms. Sakata, of juror 19, and it did not. The judge ignored it, essentially denied the motion for a new trial and allowed a very toxic deliberation to be – to move forward with a sentencing. Mr. Sanders, an innocent man, is faced with 43 years. He's currently sentenced and serving a 43-year sentence based on two extreme constitutional violations that really form the cornerstone of what American jurisprudence is all about. I see that my time is up. You'll have an opportunity later. Thank you. Thank you. Your honors, counsel, may it please the court, Kelly Stacey appearing on behalf of the state. At issue in this case is whether it was proper for the trial court to allow the state to introduce defendant's trial testimony from his first trial into his retrial. During his first trial, the trial court granted defendant's motion to suppress statements in part. The information from the suppressed statements would have stayed out of defendant's trial if he had decided not to testify at that trial and take the stand, but he testified contrary to the statements he gave to the police, which brings up prior inconsistent statements, which the state is allowed to explore on cross-examination, and that is what occurred here. Once the defendant elected to testify, any prior inconsistent statements he made to the police come in as impeachment to be addressed on cross-examination. Defendant argues that his prior testimony should not be admissible where it contains information previously excluded by a motion to suppress, and there was part of his statements that were excluded on the motion to suppress. The judge very thoughtfully and carefully looked at that motion, determined which parts were where the defendant had invoked his right to remain silent, and it was a very thoughtful order issued by the trial court. Nothing was ignored there. So the defendant argues the trial court abused its discretion when it permitted the state to introduce a certified copy of the entire transcript of that prior testimony minus redactions on any sustained objections and minus any information about an outburst the defendant made in court. The trial court allowed the admission of the prior trial transcripts based on Illinois Rule of Evidence 801D2A. The answer to that question, I believe, that I had asked counsel was, I believe it was in your brief, counsel, that it was changed in 2015 from admission by a party opponent to a statement by a party opponent. Is that correct? I believe that is correct, Your Honor, that it used to be worded as admission by a party opponent. Now it's a broader category, statements by a party opponent. And the important thing on statements by a party opponent, it needs to be the entire statement. The state doesn't have the ability to just issue parts of what the defendant testified to. The entire trial transcript is supposed to come in. So in this case, on appeal, the defendant argues the trial court abused its discretion in admitting the transcript. However, an abuse of discretion will only be found when the trial court's ruling is arbitrary, fanciful, or unreasonable, or no reasonable person would take the view adopted by the trial court. Rule 801D2A provides for the admission of prior trial testimony where a party opponent elects to use it. Here, the trial court properly concluded the requirements of Supreme Court Rule 801D2A were satisfied. 801D2A exempts an opposing party's statements from hearsay. A non-hearsay statement is admissible as substantive evidence. A defendant cannot be compelled to testify against himself, but having voluntarily submitted himself at trial and testifying on his own behalf in the former trial, it is permissible for the state on retrial to offer a defendant's statement as a statement by a party opponent. What occurred in this case is exactly what occurred in the case of U.S. v. Reed. It's a Federal Seventh Circuit case where a transcript from a prior proceeding was allowed to be introduced during the state's case-in-chief. Now, a lot has been made about the issue of the timing of when is the state allowed to introduce this transcript in a later proceeding. So I'd like to shed a little bit of light on that for the Court. Rule 801D2A, again, concerns statements by a party opponent. It doesn't have to be admissions. It's just statements. They do not have to be inculpatory. They do not have to be exculpatory. It's the entirety of the statements we're looking at here. And that rule makes admissible a statement of a party opponent from a prior trial. A party cannot submit his own statement at a later trial. Only a party opponent can do that. Now, why am I focusing on that? I'm focusing on that because when is the time a party at a trial can offer evidence? The answer is during its case-in-chief. It's really the only practical time it can be done. When the defendant is presenting his case, that's not appropriate for the state to say, I have a transcript here I want to offer it to evidence. No, you are the opponent, the state is the opponent here, offering the transcript into evidence when the state is presenting its case. That really is the only time it can be done. If the state is required to wait until a rebuttal, I just think that provides for a rule that is really not workable. The state is allowed to present this testimony. The state did do so. And, again, it is the only practical time to do that. And the state did offer a certified copy of the transcript. I'd like to get into another difference here that counsel seemed to touch on here today, and it's an important difference to point out. The defendant's statements in the police interview were deemed unlawfully acquired by the police, also by the state. The police did not scrupulously honor the defendant's right to remain silent, and the trial court suppressed statements made in violation of that. This Court can review that order. It's a very detailed and very clear order. However, defendant's testimony from his prior trial was not unlawfully acquired. The state didn't force him to testify. It was his decision. It's one of the decisions that only a defendant can make. This defendant was counseled by an attorney. The judge asked him, did you talk to your attorney? Is it a good idea for you to take the stand today and testify? We all know why that's a big issue. And that trial where he testified ended in a mistrial? That is correct. And he did not testify in the trial that's before us? That is correct, Your Honor. Directly? That's correct. And the only evidence of his testimony was the certified transcript from the prior trial? That's correct, Your Honor. And that is the entirety of that from what I can gather is attached to the appellant's brief. And that was the same circumstance in the federal case from the Seventh Circuit, the Reid case? There may have been some factual differences, but the issue that this court, I believe, is focused on is, is it permissible to submit that transcript during the state's case in chief? And in the Reid case, that's when it was done. And, again, the Illinois language tracks right along with the federal language. So even though U.S. v. Reid is not precedential, it's certainly authority that this court can look to for advice and counsel. Again, at that prior proceeding, the defendant was counsel concerning his right to testify. He was represented by counsel. And, in fact, his attorney cross-examined him on these very statements that she's now saying shouldn't have come into the trial. She asked him questions on the first, second, third, and fourth interviews. So all of that came in through her questioning as well. Moving on to the issue of juror bias. Again, the trial court did not use its discretion in determining there was a lack of foundation concerning an alleged social media meme and its ties to a juror in the defendant's case. There was no foundation established whatsoever whose social media account that was, that it actually belonged to that juror. All of this was very speculative. The other issue that came up was did the defendant or did the juror have a second conviction for a DUI? The trial court, again, looked at that issue, determined that there had been a DUI conviction, and also that it appeared as though there had been a prior court supervision granted on an initial DUI. The way court supervision works on a DUI, I'm sure the court's well aware, you're only allowed the one supervision. But that supervision really does not count as a conviction. I used to be a defense attorney, and that's how I described it to my clients. It doesn't count as a conviction if you serve through your time of that court supervision and you don't have any other problems that come up later. That's still considered you met the requirements of the court supervision. You're only allowed one of those on a DUI, and that's why it's tracked on an abstract anywhere you go in the State of Illinois, because you only are allowed that one. So the court, if the court wants me to continue answering that, I can do that, or I can just ask the court, based on the information before today, to affirm. I believe it's in your brief counsel. I believe it is too, Your Honor. So with that, I respectfully ask you to affirm. Thank you, Your Honor. Thank you. Reba. Just briefly, Your Honor, I would like to address the one point the opponent made in regard to the standard of proof that's necessary to trigger an inquiry for a biased juror. Your Honor, the standard of proof is not proof positive. The standard of proof is prima facie. In other words, it's rebuttable. But if it's put forth in good faith, it's supposed to be explored. Now, the exhibit in regard to the particular lead came from the juror's Facebook page. That's in the exhibit. I believe it's Appellants Exhibit 1. And it was labeled her name from her Facebook page. That's prima facie. At that point, an issue should be triggered for inquiry. You don't have to have proof positive. You're right. We could not have proof positive on an initial inquiry. That is the purpose of a hearing, to ascertain how factual and what do these facts mean ultimately in terms of bias. So absolutely, based on the Phillips line of cases, this evidence that Mr. Sanders put forth should have triggered a hearing. Further, the issue in regard to Mr. Sanders having the evidence introduced to him in their case in chief, Reed is the case that the initial prosecutors in the trial level relied heavily on. Reed does not factually track with the case that's before you, Your Honor. Most importantly, it does not track because Reed was not in reference to suppressed statements. At the end of the day, whenever we get through with this argument, we're looking at false evidence put before a jury to be considered, along with other evidence. Any influence that false evidence had in regard to the jury coming to a verdict should be considered sufficient to reverse, because false evidence ruins, taints the whole process. And Reed did not have that scenario in place. In fact, even the state prosecutor, appellate prosecutor, identifies that there is no case specific to the fact pattern that we have before you today, Your Honor. There is no scenario in which a trial court has reversed the law of its case on the eve of trial and allowed suppressed evidence in front of the juror. The Constitution requires that we should protect a defendant from this kind of prejudice. This is precisely what the Fifth Amendment is for. So at the point that we have the state circumventing constitutional rights of a 17-year-old boy, and it's being supported by the trial court, all we have is an appeal to right this violation. This kid was not guilty, and the jury heard a false confession and sent him to prison for 43 years. The cornerstone of this jurisprudence is to protect defendants when they are on trial for their lives. The trial court did not protect them. The trial court did not protect that boy, and the state ran roughshod over his rights. We're looking to this panel to reverse and remand. Thank you. Thank you, Counsel. The court will take this matter under advisement and issue its decision in due course.